Bijan Amini (BA 3533)
Lita Beth Wright (LW 0442)
Jason Levin (JL 8009)
STORCH AMINI & MUNVES PC
Two Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
BOVEE & THILL LLC, a Nevada limited  :
liability company,
                                     :
       Plaintiff,                    :        08-CV-00119 (MCG)
                                     :
           v.                        :        ECF CASE
                                     :
PEARSON EDUCATION, INC.,             :
A Delaware corporation and PRENTICE- :
HALL, INC., A Delaware Corporation   :
                                     :
       Defendants.                   :
------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
PEARSON EDUCATION, INC. AND PRENTICE HALL INC.'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii, iii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 2

      A.      High Discount Sales ................................................................................................ 3

      B.      Sales Through Foreign Affiliates and Subsidiaries ................................................ 4

      C.      Custom Publishing .................................................................................................. 4

ARGUMENT .............................................................................................................................. 5

I.    DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY .......................................................................................................... 5

      A.      The Complaint Adequately Alleges a Breach of Contact in Connection With Custom Publishing .................................................................................................. 6

      B.      The Complaint Adequately Alleges a Breach of Contact Based on Defendants' Improper Application of The Royalty Provisions Governing Sales Through Foreign Affiliates and Subsidiaries .......................................................................... 8

      C.      The Complaint States a Viable Claim Concerning High Discount Sales ............. 10

            1.      The Complaint Adequately Alleges a Breach of The Implied Covenant of Good Faith And Fair Dealing ................................................................... 10

            2.      The Complaint States a Plausible Claim With Respect to High Discount Sales ............................................................................................................ 13

      D.      The Incontestability Clauses Do Not Bar Plaintiff's Claims ................................ 14

      E.      In The Alternative, Leave to Amend Should Be Granted ..................................... 15

CONCLUSION ......................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*Allman v. UMG Recordings*, 530 F. Supp.2d 602 (S.D.N.Y. 2008)..................................................14

*Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955 (2007)..............................................5

*California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)....................................5

*Contemporary Mission, Inc. v. Famous Music Corporation*, 557 F.2d 918 (2d Cir. 1977)..........15

*Cusano v. Klein*, 280 F. Supp.2d 1035 (C.D. Cal. 2003) ................................................................14

*Dayan Enterprises Corp. v. Nautica Apparel, Inc.*, No. 03 Civ. 5706(LLS), 2003 WL 22832706 (S.D.N.Y. Nov. 26, 2003)..................................................................................................11

*Diaz v. NBC Universal, Inc.*, No. 08 Civ. 401(CM), 2008 WL 465135 (S.D.N.Y. Feb. 14, 2008) 5

*Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741 (S.D.N.Y. 1990)................................10

*Erickson v. Pardus*, --- U.S. ---, 127 S. Ct. 2197 (2007)................................................................6

*Frasier v. General Elec. Co.*, 930 F.2d 1004 (2d Cir. 1991)..........................................................5

*Greenwich Village Assoc. v. Salle*, 110 A.D.2d 111, 493 N.Y.S.2d 461 (1st Dep't 1985)...........10

*Holowecki v. Fed. Express Corp.*, 440 F.3d 558 (2d Cir. 2006) ....................................................6

*Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) .....................................................................5

*Micalden Investments S.A. v. Rostropovich*, No. 07 Civ. 2395(VM), 2008 WL 534819 (S.D.N.Y. Feb. 25, 2008).....................................................................................................................15

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28 (2d Cir. 1979) ..............................15

*Streit v. Bushnell*, 424 F. Supp.2d 633 (S.D.N.Y. 2006)................................................................8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .......................................................................5

*Teachers Inc. Annuity Assoc. of Am. v. Wometco Enter., Inc.*, 834 F. Supp. 344 (S.D.N.Y. 1993) ..............................................................................................................................................12

*VTR, Inc. v. Goodyear Tire & Rubber Co.*, 303 F. Supp. 772 (S.D.N.Y. 1969) .......................... 10

*W.B. David and Co., Inc. v. DWA Commc'ns, Inc.*, No. 02 Civ. 8479(BSJ), 2004 WL 369147
   (S.D.N.Y. Feb. 26, 2004) ................................................................................................... 6

*Zilg v. Prentice Hall Inc.*, 717 F.2d 671 (2d Cir. 1983) ................................................................ 8

**Statutes**

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................................ 1

Fed. R. Evid. 201(b)(2) ................................................................................................................. 9

Plaintiff, Bovee & Thill LLC ("B&T" or "Plaintiff"), submits this memorandum of law in opposition to the motion to dismiss the complaint of defendants Pearson Education, Inc. ("Pearson") and Prentice-Hall, Inc.'s (collectively, the "Defendants"), pursuant to Fed. R. Civ. Proc. 12(b)(6).[1]

## PRELIMINARY STATEMENT

Faced with a straightforward complaint that alleges cognizable claims for relief for breach of contract and breach of the implied duty of good faith and fair dealing, Defendants improperly resort to fact-based denials, gross misstatements of Plaintiff's allegations and an ill-tempered attack on Plaintiff's motive for bringing this case.[2] No matter how much Defendants twist, turn or bend the allegations of the complaint to suit their own needs, the facts in the four corners of the complaint state cognizable claims. Plaintiff does not seek to re-negotiate its contracts or challenge Defendants' pricing practices or marketing strategies. Instead, Plaintiff seeks to enforce the terms of its contracts by collecting royalties owed to it under those contracts.

The complaint sets forth two claims for relief. The first claim alleges that Defendants breached the author agreements by applying the wrong royalty rates to sales of custom books and to sales of Plaintiff's books by Defendants' foreign affiliates and subsidiaries. This claim also alleges that Defendants have denied Plaintiff its right under the contracts to inspect relevant

---

[1] This memorandum of law is submitted together with the Declaration of Jason Levin, Esq., dated April 2, 2008 ("Levin Dec.").

[2] Defendants have littered their brief with what can most generously be described as "hyperbole" (Def. Mem. at 2), including unsubstantiated innuendo that, inter alia, Plaintiff is the greedy multi-millionaire assignee of several author agreements that, after litigating its prior publishers into submission, seeks to re-negotiate its contracts through litigation with Pearson, an international media company whose annual sales exceed $8 billion. (Def. Mem. at 1). Defendants' accusations are all made in their memorandum of law and are unsupported by sworn statements or other admissible evidence (which, in any event, would have no place on this motion to dismiss). In short, they are all extrinsic to the complaint and, therefore, irrelevant to whether Plaintiff has pled cognizable claims for relief. The fact that Plaintiff does not otherwise address these assertions in this memorandum of law should not in any way be construed as an admission that they are true.

books and records. The second claim alleges that Defendants breached the covenant of good faith and fair dealing by interpreting the agreements in such a manner that improperly captures more sales as high discount sales (to which Defendants apply a reduced royalty rate), thus wrongfully depriving Plaintiff of the benefit of its bargain. Defendants, in bad faith, maximize their own share of profits at Plaintiff's expense.

Defendants cannot credibly dispute these well-pled, legally viable claims. Instead, they misconstrue the complaint as challenging how they market the works, how they set prices of the products, and their right to publish custom books—acts which they claim are expressly permitted by the contracts. But the complaint does not challenge those acts. Rather, the complaint challenges the propriety of Defendants' calculations of royalties paid to Plaintiff under various provisions of the Author Agreements.

Defendants essentially ask this Court to conclude, at the pleading stage, that they applied the correct royalty rates. Defendants also argue that Plaintiff's claims are barred by "incontestability clauses" in the agreements. As shown below, both defenses are inappropriate for adjudication at this juncture as they necessarily (and improperly) ask the Court to make factual findings on the pleadings.

Defendants' motion should accordingly be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff filed the complaint on January 7, 2008. Plaintiff is the beneficiary of author agreements with Defendants for the publication and sale of five college textbooks on business communication and introduction to business (the "Works"). (Compl. ¶¶ 15-16).[3] The five relevant author agreements are dated April 18, 1997 (two agreements); July 25, 1997 (collectively, the "1997 Agreements"); March 23, 1999 (the "1999 Agreement"); and October

---

[3] The complaint is annexed to the Levin Dec. as Ex. A.

2

12, 2001 (the "2001 Agreement") (collectively, the "Author Agreements"). (*Id.* ¶¶ 17, 33, 38, 51). The complaint contains three distinct sets of factual allegations relating to Defendants' improper calculation of royalties under the Author Agreements. Those factual allegations support Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The breach of contract claim is also based on Defendants' refusal, in violation of the agreements, to permit Plaintiff adequate access to relevant books and records. (*Id.* ¶ 93).

A.  **High Discount Sales**

The royalty rates in the Author Agreements range from 17% to 18.75%, "unless otherwise specified." (Compl. ¶ 59). One such specification is for high discount sales, which are sales of the Works for a discount of 50% (or 51% under the 1999 and 2001 Agreements) or greater off the "single copy price." (*Id.*). The reduced royalty rate for high discount sales is 5%. Defendants do not calculate the discount off the "single copy price." (*Id.* ¶ 60). Instead, they calculate the discount off the "list price." (*Id.*). The "list price" is an artificial price at which Defendants hardly ever consummate sales. (*Id.* ¶¶ 60, 62).

By calculating the discount off the higher "list price" rather than the "single copy price" when calculating royalties due Plaintiff, Defendants capture a greater number of sales within the category of high discount sales, thus improperly designating more sales within the 5% royalty rate than a good faith reading of the Author Agreements would permit. (*Id.* ¶ 61, 69). Defendants' practice of manipulating the calculation constitutes a bad faith performance of the Author Agreements, deprives Plaintiff of the benefit of its bargained for benefits, and frustrates the purpose of the Author Agreements. (*Id.* ¶¶ 69, 100). Defendants' high discount sales practice is a breach of the implied covenant of good faith and fair dealing, for which Plaintiff has been damaged in an amount to be proven at trial, but not less than $500,000. (*Id.* ¶ 101).

B.  **Sales Through Foreign Affiliates and Subsidiaries**

Another exception to the default royalty rates is a different rate for sales of the Works through Defendants' foreign affiliates and subsidiaries. (Compl. ¶ 74). Rather than apply the applicable rate to sales of the Works through their foreign affiliates and subsidiaries, Defendants improperly designate such sales as licensing of "subsidiary rights"[4] and remit to Plaintiff a reduced royalty rate. (*Id.* ¶¶ 73, 75). That reduced royalty rate is 50% of the license fee, which results in Plaintiff receiving, in some instances, only a 1% royalty rate, (*Id.* ¶ 76), which is far lower than the rate agreed to for sales through Defendants' foreign affiliates and subsidiaries.

By failing to remit to Plaintiff the applicable royalty rate on sales of the Works through their foreign affiliates and subsidiaries, Defendants have breached the Author Agreements. (*Id.* ¶ 90). Plaintiff has been damaged in an amount to be proven at trial, but not less than $400,000. (*Id.* ¶ 78).

C.  **Custom Publishing**

The practice of custom publishing permits professors and other educators to customize textbooks to particular teaching needs by, for example, combining the Works with other products sold by the Defendants into one book. (Compl. ¶¶ 79). Defendants apply the reduced royalty rate that applies to abridgments (10%) to sales of custom books. (*Id.* ¶ 82). The term "abridgments" is not defined in the Author Agreements. (*Id.*). The proper base royalty rate for custom books is a higher rate than the 10% rate for abridgements. (*Id.* ¶ 84).

---

[4] "Subsidiary rights" are defined in the 1997 Author Agreements and comprise "publishing in all languages; broadcasting by radio; making audio or video recordings; publishing book club editions; making foreign or other adaptations or derivative works and other versions; inclusion in anthologies; showing by motion picture or television; syndicating, quoting, and otherwise utilizing the Work[s] and material based on the Work[s]." *See* Declaration of David Leichtman, dated February 29, 200[8] ("Leichtman Dec."), Exs. E, F and G, at Section I(a).

By failing to remit to Plaintiff the proper royalty rate on custom books, the Defendants have breached the Author Agreements. (*Id.* ¶ 92). Plaintiff has been damaged in an amount to be proven at trial, but not less than $400,000. (*Id.* ¶ 85).

## ARGUMENT

## DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court is required to accept the material facts alleged in the complaint as true. *Diaz v. NBC Universal, Inc.*, No. 08 Civ. 401(CM), 2008 WL 465135, *4 (S.D.N.Y. Feb. 14, 2008) (*citing Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991)). The court must also read the complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff. *Id.* (*citing California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (quotation marks and brackets omitted). A court should apply "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see also Bell Atlantic*, 127 S. Ct. at 1974 (explicitly disclaiming that the Court was "requir[ing] heightened fact pleading of specifics") ((*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (rejecting heightened pleading standard)). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is

entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007) (*quoting Bell Atlantic*, 127 S. Ct. at 1964) (internal quotations omitted).

Supported by detailed factual allegations, the complaint states plausible claims for relief under any cognizable pleading standard.

### A. The Complaint Adequately Alleges a Breach of Contract in Connection With Custom Publishing

To state a claim for breach of contract under New York law, a complaint must allege: (1) the existence of a contract; (2) the plaintiff's performance of his obligations thereunder; (3) the defendant's failure to perform his obligations; and (4) resulting damages to the plaintiff. *W.B. David and Co., Inc. v. DWA Commc'ns, Inc.*, No. 02 Civ. 8479(BSJ), 2004 WL 369147, *2 (S.D.N.Y. Feb. 26, 2004). As shown below, the complaint adequately alleges breaches of the Author Agreements.

Plaintiff's allegation concerning custom publishing is simply that Defendants apply a 10% royalty rate to custom books when the rate should be higher, thereby breaching the Author Agreements. Defendants attempt to make much of the fact that the complaint does not identify the appropriate royalty rate. However, the Author Agreements reveal the appropriate rate, and Defendants argue that the agreements are "integral" to the complaint and must be read in conjunction with it. (Def. Mem. pp. 9-10); *see, e.g., Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006). Reading the complaint in conjunction with the Author Agreements, as explained below, it is clear that the appropriate royalty rates for custom books under the Author Agreements are the default rates of 17% - 18.75%. Since it is alleged that Defendants

applied a 10% date to sales of custom books, the complaint states a breach of contract claim with respect to custom publishing.

Under Section 3 of the 1997 Agreements, the royalty rates of 18.5% and 18.75% apply to sales of the Works "except as otherwise provided." Nowhere in the 1997 Agreements, however, are custom books mentioned. Therefore, the default rates govern sales of custom books, with any adjustments that may be required by Section I(e).[5] Under Section 3 of the 1999 and 2001 Agreements, the royalty rates of 17% and 17.75% apply to sales of the Works "except as otherwise provided." The 1999 and 2001 Agreements do not, however, provide a royalty rate for custom books. To be sure, the 1999 and 2001 Agreements do mention custom books in Section H(b),[6] but that section, which is substantially similar to Section I(e) of the 1997 Agreements, concerns the apportionment of royalties among multiple authors and does not provide a royalty rate that would displace the default rates. Since the 1999 and 2001 Agreements do not provide a royalty rate for custom books, the default royalty rates govern sales of custom books, with any adjustments that may be provided by Section H(b).

The complaint alleges that Defendants applied a royalty rate of 10% to sales of custom books. The Defendants should have applied the higher default rates of 17% - 18.75%, depending on the relevant contract. Although Defendants ask the Court to find that the royalty rate for

---

[5] Section I(e) of the 1997 Agreements provides: "If the Publisher packages or sells the entire Work or any part of the Work together with other products or as a segment of another product, in determining the net price for the Work for purposes of calculating royalty payments, the Publisher will allocate to the Work that portion of the proceeds of the sale which it determines to be the Work's fair value to the entire product sold." See Leichtman Dec., Exs. E, F and G.

[6] Section H(b) of the 1999 and 2001 Agreements provide: "For uses of portions of, or quotations from, the Work, including in a collective work or custom published work, and for sales of the Work as part of a package together with other works ... the Publisher shall determine the net cash received for the Work on which the applicable royalty will be paid by allocating to the Work that portion of the proceeds for the Package which it determines to be the proportionate and fair value of the Work to the entire Package..." See Leichtman Dec., Exs. H and I.

custom books should be the 10% rate for "other versions" under the 1997 Agreements and the 10% rate for "abridgments" under the 1999 and 2001 Agreements, the Court cannot make that finding on a motion to dismiss. *See Streit v. Bushnell*, 424 F. Supp.2d 633, 638, 641 (S.D.N.Y. 2006) (stating that "it is not the role of the Court at this point to choose summarily who is right or wrong ... regardless of the defendant's denials and contrary versions of the underlying events, it is the *plaintiff's* account of the facts that this Court must accept as true and from which the Court is directed to draw all reasonable inferences in *plaintiff's* favor") (emphasis in original).

Moreover, even if Defendants were right that the 10% rate for abridgments applied to sales of custom books, which Plaintiff disputes, that rate is expressly limited to abridgments "for export markets" (*see* Leichtman Dec., Exs. H and I, at Section H(a)(iv)), and so Plaintiff has stated a contract claim with respect to sales of custom books in the United States.

### B. The Complaint Adequately Alleges a Breach of Contract Based on Defendants' Improper Application of The Royalty Provisions Governing Sales Through Foreign Affiliates and Subsidiaries

In addition to the allegation that Defendants apply the wrong royalty rate to custom books, Plaintiff's breach of contract claim also alleges that Defendants apply the wrong royalty rate to sales of the Works through Defendants' foreign affiliates and subsidiaries.[7] Rather than apply the applicable rate to sales through foreign affiliates and subsidiaries, Defendants use a reduced royalty rate on the supposed basis that the Works are licensed to their foreign affiliates and subsidiaries. Since Plaintiff alleges that the use of the reduced royalty rate for licenses is inappropriate for these particular sales, Plaintiff has stated a claim for breach of contract.

---

[7] As Plaintiff does not challenge Defendants' business judgment to sell the Works in foreign markets or the price at which such Works sell, Defendants' citation to *Zilg v. Prentice Hall Inc.* is inapposite. 717 F.2d 671 (2d Cir. 1983). In any event, *Zilg* expressly permits a party to challenge another party's business judgment. *Id.* at 680 (holding that a publisher is required "to make a good faith effort to promote the book initially ... Once the initial obligation is fulfilled, *all that is required is a good faith business judgment*") (emphasis added).

8

Specifically, Section I(d) of the 1997 Agreements provides a 15% royalty rate for "copies of book versions of the Works sold through any of the Publisher's subsidiaries." *See* Leichtman Dec., Exs. E, F and G. Section H(a)(i) of the 1999 and 2001 Agreements provides a 10% royalty rate for "the sale of copies of the Work by the Publisher or its affiliate outside the United States." *See* Leichtman Dec., Exs. H and I. Instead of applying those rates to sales of the Works through Defendants' foreign affiliates and subsidiaries, the complaint alleges that Defendants deem such transactions as licenses for Subsidiary Rights, and pay Plaintiff the reduced royalty rate of 50% of the net profit received from those licenses. (Compl. ¶¶ 75-76).

Defendants' motion to dismiss this aspect of the contract claim is predicated on the Court making several findings of fact, which are not appropriate on a motion to dismiss. For example, Defendants ask this Court to find that the Works are not sold through its subsidiaries, but rather through its affiliates, which is an issue of fact that cannot be resolved here. *See Streit*, 424 F. Supp.2d at 638, 641. Further, based on just one example, Defendants ask this Court to take judicial notice of a broad assertion that all Works sold in foreign markets are "obviously very different" than the Works sold in the United States. (Def. Mem. at 15).[8] This Court should not take judicial notice because that "fact" is not "capable of accurate and ready determination." Fed. R. Evid. 201(b)(2).

Defendants ask this Court to make those findings of fact and conclude at the pleading stage that they applied the appropriate royalty rate of 50% of the net profit of license fees which they claim they received from their foreign affiliates and subsidiaries. Defendants argue that they can license sales of the Works to their own affiliates and subsidiaries as they see fit and

---

[8] Defendants ask the Court to compare one Work allegedly sold in the United States with a copy of the Work allegedly sold in foreign markets, and conclude that even though the text, chapters and pagination (among other things) are the same, the two Works are not identical because the paper quality and color of photographs are different. That is an issue of fact that is inappropriate to resolve on a motion to dismiss.

9

Plaintiff has not right to challenge that act. Section H(a)(vii) of the 1999 and 2001 Agreements, however, provides that the reduced royalty for licenses is only applicable to licenses with "third part[ies]." *See* Leichtman Dec., Exs. H and I. Defendants' affiliates and subsidiaries are not third parties. Therefore, the complaint states a contract claim related to Defendants' improper application of the royalty rates to sales of the Works through foreign affiliates and subsidiaries.

C. **The Complaint States a Viable Claim Concerning High Discount Sales**

  1. **The Complaint Adequately Alleges a Breach of The Implied Covenant of Good Faith And Fair Dealing**

Under New York law, an implied covenant of good faith and fair dealing inheres in every contract. *Greenwich Village Assoc. v. Salle*, 110 A.D.2d 111, 493 N.Y.S.2d 461, 464 (1st Dep't 1985). This implied covenant precludes parties to a contract "from taking action 'which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Wallace v. Merrill Lynch Capital Servs., Inc.*, 10 Misc.3d 1062, 814 N.Y.S.2d 566 (Sup. Ct. N.Y. County 2005) (citation omitted). The covenant is violated "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under the agreement." *Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990).

Defendants' own authority recognizes that "[i]n every commercial agreement in which the compensation promised by one to the other is a percentage of profits or receipts, or is a royalty on goods sold, manufactured or mined, there will nearly always be found an implied promise of diligent and careful performance in good faith." *VTR, Inc. v. Goodyear Tire & Rubber Co.*, 303 F. Supp. 772, 777-78 (S.D.N.Y. 1969); *see also Dayan Enterprises Corp. v. Nautica Apparel, Inc.*, No. 03 Civ. 5706(LLS), 2003 WL 22832706, *2 (S.D.N.Y. Nov. 26, 2003) (holding that unauthorized discounts made to subsidiary of defendant stated claim for

10

breach of covenant of good faith and fair dealing, but dismissing claim as duplicative of adequately stated breach of contract claim).

Under the Author Agreements, Plaintiff is entitled to a reduced royalty rate if the Works are sold at or below 50%[9] of the "single copy price." Instead of calculating the discount off of the "single copy price," the complaint alleges that Defendants use what they call the "list price"—a term which does not appear in the Author Agreements. The "list price" is higher than the "single copy price" and is not a good faith or fair equivalent of the "single copy price." Defendants' practice of using the "list price" permits Defendants to capture more sales in the high discount category than was contemplated under the Author Agreements. Since Plaintiff is entitled to a reduced royalty rate on high discount sales, and the Defendants inflate the number of high discount sales, Plaintiff earns fewer royalties as a result.

By continuing to equate "list price" with "single copy price," Defendants' motion does not respond to the allegations in the complaint, but simply reiterates the position they have taken all along in (mis)calculating Plaintiff's royalties. Defendants' factual response that it properly paid royalties is not dispositive on a motion to dismiss. *See Streit*, 424 F. Supp.2d at 638, 641 (stating that "it is not the role of the Court at this point to choose summarily who is right or wrong, ... regardless of the defendant's denials and contrary versions of the underlying events, it is the *plaintiff's* account of the facts that this Court must accept as true and from which the Court is directed to draw all reasonable inferences in *plaintiff's* favor") (emphasis in original).

Plaintiff does not complain about the actual sales prices of its Works. Rather, the complaint alleges that by basing the high discount sales calculation on the artificially high "list price," Defendants exercise their discretion in a manner that reduces Plaintiff's royalties. There is no explicit provision setting out how a "single copy price" is to be set for purposes of

---

[9] Under the 1999 and 2001 Agreements, the relevant figure is 51%.

calculating the high discount sales royalty rate. It is only by a self-serving interpretation of the contracts that Defendants can equate the contractual "single copy price" with "list price" (a price at which they are alleged to make virtually no actual sales). Defendants are large, sophisticated entities who drafted the contracts at issue. Had they wanted to explicitly tie the "single copy price" to the "list price," they certainly could have done so. They did not. Accordingly, they have an obligation to determine "single copy price" in a fair manner. The complaint alleges that, by equating "single copy price" with "list price," Defendants did not act in good faith.

The Author Agreements do not expressly allow Defendants to base the high discount calculation on the "list price." Consequently, Defendants' reliance on cases dismissing claims where the contract expressly allows a party to engage in the challenged conduct is misplaced. *See, e.g., Teachers Inc. Annuity Assoc. of Am. v. Wometco Enter., Inc.*, 834 F. Supp. 344, 349 (S.D.N.Y. 1993) (dismissing claim that defendant acted in bad faith by withholding consent because the contract expressly permitted the defendant to withhold consent and no limitation was placed on that right); *VTR, Inc. v. Goodyear Tire & Rubber Co.*, 303 F. Supp. 772, 778 (S.D.N.Y. 1969) ("And if defendants were given the right to do what they did by the express provisions of the contract there can be no breach").

Where the complaint alleges that no contract provision establishes a specific methodology for calculating the "single copy price" and that the Defendants employ their own calculation based upon a bad faith interpretation of the contracts, Plaintiff states a claim for breach of the implied covenant of good faith and fair dealing.

2. **The Complaint States a Plausible Claim With Respect to High Discount Sales**

Relying on *Bell Atlantic*, Defendants argue that the complaint does not plead a plausible claim for relief with respect to the high discount sales claim. Defendants' argument misses the mark because it again mischaracterizes that claim.

According to the Defendants, the Plaintiff alleges that the Defendants purposely enter into high discount sales transactions even though they can sell the Works for more money. They declare that it is "demonstrably implausible" to claim that Defendants intentionally discount prices to increase profits because allegedly their profits decrease as a function of price. (Def. Mem. 17). Defendants' mathematical equations, hypothetical sales scenarios and material extrinsic to the complaint are fraught with factual assumptions.

Plaintiff's high discount sales claim, however, is not that the Works are purposely sold for less money. The high discount sales claim is that when Defendants determine whether a sale qualifies as a high discount sale, they do so in bad faith. Defendants have economic incentives to increase the number of sales that qualify as high discount sales—they pay Plaintiff lower royalties on such sales and therefore keep more profits for themselves. The allegation is not that actual sales prices are manipulated, but that, as a result of bad faith mathematics, more sales qualify for the lower royalty rates applicable to high discount sales.

When viewed in their proper context, it is clear that Plaintiff's factual allegations "raise a right to relief above the speculative level, on the assumption that all of the Complaint's allegations are true (even if doubtful in fact)." *See Bell Atlantic*, 127 S. Ct. at 1965 (citations omitted). Since Plaintiff alleges that Defendants abuse their discretion and act in bad faith in connection with the high discount sales practice, the complaint states a plausible claim for breach of the implied duty of good faith and fair dealing.

### D. The Incontestability Clauses Do Not Bar Plaintiff's Claims

Defendants' final argument is that Plaintiff's claims are barred either in whole or in part by the incontestability clauses contained in the Author Agreements, which provide that: "[r]oyalty statements will be final and binding upon the Author unless, within two years from the date of the statement, the Author objects to such statement in writing which states the specific objection and the basis for such objection." This argument fails because the Plaintiff alleges that it provided the requisite written notice.

As alleged in the complaint (¶ 88), the Plaintiff complied with all of its obligations under the Author Agreements, which includes the notice provisions. The sufficiency of that notice is an issue of fact that cannot be decided on a motion to dismiss. *See Allman v. UMG Recordings*, 530 F. Supp.2d 602, 606 (S.D.N.Y. 2008). In *Allman*, the court held that the sufficiency of notice was such a fact based determination that it could not be decided on a motion for summary judgment. *Id.* (holding that the adequacy of notice is "a material issue of fact that would be inappropriate for the Court to determine on summary judgment") (dismissing claims on other grounds).

Rather than demonstrate an absence of notice, Defendants themselves raise a factual issue as to the sufficiency of Plaintiff's objections by attaching to their motion papers two complaints Plaintiff filed in the United States District Court in Nevada. *See* Leichtman Dec., Exs. A and B. Those complaints clearly object to royalty payments made by the Defendants and provide specific reasons underlying those objections. *See Cusano v. Klein*, 280 F. Supp.2d 1035, 1044 (C.D. Cal. 2003) ("By filing this action in July 1997, Cusano effectively provided written objection to the accounting statements provided by Defendants") (dismissed for other reasons) (applying New York law). Incredibly, Defendants even contend that the complaint filed in this

action does not constitute notice (let alone adequate notice) because they say it fails to provide specific objections to the royalty payments. (Def. Mem. at 21). Any fair reading of the complaint demonstrates otherwise.

Defendants' argument that the notice was insufficient because Plaintiff did not attach the challenged royalty statements is also an issue for the trier of fact. In any event, Defendants have not (and cannot) point to any contractual requirement that the Plaintiff send back copies of the royalty statements it received from Defendants for the notice to be adequate. Moreover, a notice provision such as the incontestability clause at issue is not to be construed "as if it were a common law pleading requirement under which every slip would be fatal." *Contemporary Mission, Inc. v. Famous Music Corporation*, 557 F.2d 918, 925 (2d Cir. 1977) (rejecting defendant's argument as "hypertechnical" that the notice was insufficient because it cited a different paragraph of the contract than the one under which recovery was ultimately awarded). Consequently, Defendants' argument that the incontestability clause bars Plaintiff's claims must be rejected on this motion to dismiss.

E.  **In The Alternative, Leave to Amend Should Be Granted**

If this Court finds that the complaint fails to state a claim for relief in any respect, leave to amend should be granted pursuant to Fed. R. Civ. Proc. 15. Under Rule 15(a), leave to amend should be freely given when justice requires. *Micalden Investments S.A. v. Rostropovich*, No. 07 Civ. 2395(VM), 2008 WL 534819, *3 (S.D.N.Y. Feb. 25, 2008). "If the plaintiff has at least colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979) (citations omitted). Here, it is clear that Plaintiff has valid claims, there is no suggestion that Plaintiff is guilty of

undue delay or bad faith, and Defendants will not be prejudiced by any amendment, particularly where discovery has not commenced.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) deny the motion to dismiss in its entirety; and (2) order any further and other relief it deems just and proper.

Dated: New York, New York
April 2, 2008

STORCH AMINI & MUNVES PC

By _/s/ Lita Beth Wright_
Bijan Amini (BA 3633)
Lita Beth Wright (LW 0442)
Jason Levin (JL 8009)
Two Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
*Attorneys for Plaintiff*